IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER BUSSEY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 3:10-CV-191-WKW [WO] |
| | ) | |
| MACON COUNTY GREYHOUND | ) | |
| PARK, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Seven Plaintiffs bring this putative class action, pursuant to § 8-1-150 of the Alabama Code, seeking to recoup the money they lost playing electronic bingo machines at Victoryland in Macon County, Alabama. Plaintiffs contend that the electronic bingo machines, although held out as legitimate charity bingo operations under Amendment No. 744 to the Alabama Constitution, were, in fact, illegal gambling devices under Alabama law. Defendants, consisting of the owner and operator of Victoryland and the machine manufacturers, call Plaintiffs' bluff in Rule 12(b)(1) and (b)(6) motions to dismiss, contending that the legal odds are on their side. *See* Fed. R. Civ. P. 12(b)(1) & (6).

Before the court are seven motions to dismiss filed by Defendants (1) Cadillac Jack, Inc. (Doc. # 74), (2) IGT (Doc. # 75), (3) Macon County Greyhound Park and Milton E. McGregor (Doc. # 76), (4) Multimedia Games, Inc. (Doc. # 77), (5) Bally Gaming, Inc. (Doc. # 82), (6) Nova Gaming, LLC (Doc. # 83), and (7) Miami Tribe of Oklahoma Business

Development Authority ("Tribe") (Doc. # 86).[1]  The collective grounds for dismissal raised by Cadillac Jack, IGT, Macon County Greyhound Park, Milton McGregor, Multimedia Games, Inc., Bally Gaming, Inc., and Nova Gaming, LLC, are that the § 8-1-150 claim is not ripe or, alternatively, is not supported by sufficient factual allegations to meet the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Plaintiffs filed a consolidated response opposing those grounds.  (Doc. # 58; *see also* Doc. # 94.)  Reply briefs followed.  (Docs. # 62-66.)  The Tribe contends that it is a political subdivision of an Indian tribe and, thus, has sovereign immunity from suit.  Opposing the Tribe's motion, Plaintiffs desire to conduct discovery on the issue of whether there is a contractual waiver of immunity.  (Doc. # 96.)  After careful consideration of the arguments of counsel, the law and the allegations of the operative Complaint, the court finds that all motions are due to be denied.[2]

---

[1] An order ruling on Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss also has been entered this date in a case of a similar nature.  *See Adell v. Macon County Greyhound Park, Inc.*, No. 3:10cv122 (M.D. Ala. filed March 31, 2011).  In *Adell*, as here, the plaintiffs lost money playing electronic bingo at Victoryland, and have sued to recover those losses under § 8-1-150 of the Alabama Code.  With the exception of the Tribe, the named defendants are the same in this action as in *Adell*.  *Adell* is not an identical suit, however.  *Adell* was filed as a "mass action" consisting presently of 853 plaintiffs, and an additional claim alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, was at issue in *Adell*.  In *Adell*, as here, the § 8-1-150 claim survived the motions to dismiss.  *Adell*'s RICO claim did not.

[2] Given the numerous briefs filed in support of and in opposition to the motions to dismiss, the filings are cited herein by using the docket numbers assigned to the documents in the court's electronic filing system.  The operative Complaint, which is the Amended Complaint, is cited as "Am. Compl." (Doc. # 70.)

# I.  JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332(d)(2).  Personal jurisdiction and venue are not contested, and there are adequate allegations of both.

# II.  STANDARD OF REVIEW

## A.    Rule 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8:  "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2).  When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court must take "the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 129 S. Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950 (brackets added; citation omitted).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The

3

standard also "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.  While the complaint need not set out "detailed factual allegations," it must provide sufficient factual amplification "to raise a right to relief above the speculative level."  *Id.* at 555; *see also James River Ins. Co. v. Ground Down Eng'g, Inc.*, 540 F.3d 1270, 1274 (11th Cir. 2008) (*Twombly* formally retired "the often-criticized 'no set of facts' language previously used to describe the motion to dismiss standard." (citation omitted)).

**B.**   **Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction may assert either a factual attack or a facial attack to jurisdiction.  *See McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007); *accord Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990).  A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529 (internal quotation marks omitted).  A facial attack, on the other hand, "require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction." *McElmurray*, 501 F.3d at 1251 (quoting *Lawrence*, 919 F.2d at 1529). Because the allegations in the "complaint are taken as true" on a facial Rule 12(b)(1) motion, it provides a plaintiff "safeguards similar to those retained when a Rule 12(b)(6) motion is raised." *Id.* (citation and internal quotation marks omitted)

## III.  BACKGROUND

**A.**   **Facts**

The relevant facts alleged in the operative Complaint, which are taken as true for purposes of the motions, are as follows.  At all times material to this litigation, Defendant Macon County Greyhound Park ("MCGP") offered pay-to-play electronic bingo machines to the public at its casino in Macon County, Alabama, under the names Victoryland and Quincy's 777.[3]  (Am. Compl. ¶¶ 27, 29.)  MCGP is an Alabama corporation.  (Am. Compl. ¶ 10.)   Its president and chief operating officer is Defendant Milton McGregor ("McGregor"), who resides in Alabama.  (Am. Compl. ¶ 10.)

The remaining Defendants "own[ed] and operat[ed]" the machines "used in whole or in part by MCGP " in the operation of electronic bingo gaming at Victoryland.  (Am. Compl. ¶¶ 11-16.)  Defendant Multimedia Games, Inc. ("MMG"), is a Texas corporation; Defendant Cadillac Jack, Inc., is a Georgia corporation; the Tribe, doing business as Rocket Gaming Systems, is an Oklahoma corporation; Defendant Nova Gaming, LLC ("Nova"), is a South Carolina corporation; and Defendants IGT and Bally Gaming, Inc. ("Bally"), are Nevada corporations.  (Am. Compl. ¶¶ 11-16.)

The seven Plaintiffs, who live in Georgia, played the electronic bingo machines at Victoryland on "various occasions" during the six-month period preceding the filing of the original Complaint.  (Am. Compl. ¶¶ 1-9, 27.)  In particular, they "paid to play and did play"

---

[3] For ease of reference, Victoryland and Quincy's 777 are referred to together as "Victoryland."

electronic bingo machines owned and operated by each Defendant.  (Am. Compl. ¶ 42; *see also* Am. Compl. ¶ 27.)

**B.     Amendment No. 744 to the Alabama Constitution**

The commencement of electronic bingo at Victoryland has as its origin Amendment No. 744 to the Alabama Constitution.  In 2004, Amendment No. 744 was ratified, having been approved by a majority of the qualified electors in Macon County.  *See* Ala. Const. 1901 amend. No. 744; *see also* Ala. Const. 1901 Art. XVIII § 284.01 (Recomp.) (Amend. No. 425 & Amend. No. 555).  The constitutional amendment permits "[t]he operation of bingo games for prizes or money by nonprofit organizations for charitable, educational, or other lawful purposes," and requires the sheriff of Macon County to "promulgate rules and regulations for the licensing and operation of bingo games within the county."  *Id.*; (*see also* Am. Compl. ¶ 22.)

Plaintiffs allege that the operation of electronic bingo machines at Victoryland contravenes Amendment No. 744 because the 'machines are not the game commonly known as bingo," are aided by unauthorized "electronic device[s]," and do not "substantially benefit the nonprofit organizations through which Defendants purport to operate their gaming machines."  (Am. Compl. ¶ 31.)  Plaintiffs argue that Amendment No. 744 contemplates the allowance of only paper, not electronic, bingo.  (Am. Compl. ¶¶ 23-24.)  Plaintiffs aver that Defendants hide behind the "purported protection" of Amendment No. 744 to operate electronic bingo machines, which are, in fact, "slot machines" and "games or contests of chance" that are prohibited under Section 65 of the Alabama Constitution and Alabama's

6

criminal statutes.  (Am. Compl. ¶¶ 20, 21, 25, 26, 29, 30.)  These allegations characterize Plaintiffs' pivotal legal position, *i.e.*, that the electronic bingo machines they played at Victoryland are illegal under Alabama law.  As legal conclusions, these allegations are not taken as true for purposes of ruling on the present motions, *see Iqbal*, 129 S. Ct. at 1949, but are noted here to provide context to Plaintiffs' claims.

## C.  The Claims

### 1.  The Original Class Action Complaint

Based upon the premise that Defendants' "purported legitimate charitable bingo operation[ ]" at Victoryland was "in fact an illegal operation of electronic bingo gambling machines" (Doc. # 1, at 1), Plaintiffs filed this lawsuit on March 4, 2010.  The complaint, titled "Original Class Action Complaint," contained two counts.  In Count I, Plaintiffs sought recovery of their gambling losses from Defendants under § 8-1-150 of the Alabama Code. (Doc. # 1 ¶¶ 42-46.)  In Count II, Plaintiffs sought treble damages from Defendants under the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.  (Doc. # 1 ¶¶ 47-55.)  On April 28, 2010, Defendants filed motions to dismiss the Original Class Action Complaint for failure to state a claim and lack of subject matter jurisdiction.  (Docs. # 37, 39, 41, 43, 45, 49); Fed. R. Civ. P. 12(b)(1) & (b)(6).  On June 4, 2010, Plaintiffs voluntarily dismissed their RICO claim in Count II.  (Doc. # 57.)

### 2.  The Amended Class Action Complaint

On June 18, 2010, Plaintiffs filed the operative one-count Amended Class Action Complaint ("Amended Complaint").  It omits the RICO claim, but leaves intact the § 8-1-150

claim.[4]  Count I, the sole count, alleges that Defendants' electronic bingo machines are "illegal gambling devices" (Am. Compl. ¶ 41) in violation of Alabama law, that Plaintiffs "paid to play and did play" those machines during the requisite time period (Am. Compl. ¶ 42), and that Defendants' "operation of illegal bingo games" proximately caused their injuries (Am. Compl. ¶ 43.)  Plaintiffs seek to recover "all monies they paid to" Defendants "as wagers on illegal bingo gaming machines" (Am. Compl. ¶ 44) for the six months preceding the filing of the original Complaint (Am. Compl. ¶ 27).[5]  They also request a declaration that "Defendants' electronic bingo devices [are] illegal under Alabama law." (Am. Compl., Prayer for Relief, at 11.)

Finally, the Amended Complaint contains class allegations.  (Am. Compl. ¶¶ 32-39.) Plaintiffs seek class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of

> all persons who paid to play "bingo" at Victoryland and Quincy's 777 casino on Defendants' electronic gaming machines and lost money during the six months prior to the filing of the original complaint, excluding those individuals who have filed an individual lawsuit on their own behalf concerning these claims.

---

[4] By separate order, the motions to dismiss the Original Class Action Complaint were denied as moot based upon the filing of the Amended Complaint.  (Doc. # 97.)

[5] In paragraph 44 of the Amended Complaint, as pointed out by IGT (Doc. # 75, at 2), Plaintiffs allege that they are seeking to recover money paid as wagers "during the past six months prior to the filing of *this* complaint."  (Am. Compl. ¶ 44.)  IGT suggests that the phrase "*this* complaint" logically refers to the Amended Complaint, rather than to the original Complaint, but says that under § 8-1-150, "the six month period began to run from the time of the filing of the original complaint, not the filing of the Amended Complaint."  (Doc. # 75, at 2); *see* Ala. Code § 8-1-150 (permitting recovery of lost wagers "by an action commenced within six months from the time of such payment or delivery").  IGT does not urge dismissal on this ground.  The potential pleading inconsistency is merely noted here.

(Am. Compl. ¶ 32.)

## IV.  DISCUSSION

Alabama has had in place for more than 150 years a statute prohibiting the enforcement of a contract giving rise to a gambling debt.  *See* Ala. Code § 8-1-150.  Section 8-1-150(a), which is titled, "Contracts founded upon gambling consideration void; recovery of money paid or things of value delivered," provides:

> All contracts founded in whole or in part on a gambling consideration are void. Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery.

*Id.*  Defendants move for dismissal, pursuant to Rule 12(b)(1) and (b)(6).  The arguments are addressed below.

## A.    The Motions to Dismiss Filed by Cadillac Jack, IGT, MCGP, Mr. McGregor, MMG, BGI and Nova

Cadillac Jack, IGT, MCGP, Mr. McGregor, MMG, BGI and Nova contend that the § 8-1-150 claim is not ripe or, alternatively, is not supported by sufficient factual allegations to be "plausible."  *Twombly*, 550 U.S. at 555.  As discussed below, not all arguments are asserted by all Defendants, and some Defendants make their arguments through incorporation of co-Defendants' briefs.

### 1.    *Ripeness*[6]

Cadillac Jack, Mr. McGregor, Victoryland and MMG[7] contend that Plaintiffs' § 8-1-150 claim is not ripe because it is contingent on an event that may never occur, that event being a final adjudication from an Alabama state court that electronic bingo in Macon County is illegal under Alabama's criminal statutes and/or its constitution.  They contend that, "to date, no Alabama Court has made any determination regarding the legality of electronic bingo in Macon County" (Doc. # 42, at 4), or that the electronic bingo machines Plaintiffs played at Victoryland "are, in fact, 'illegal'" (Doc. # 38, at 15; *see also* Doc. # 78, at 10-12.)  Until an Alabama court decides that issue, Defendants contend that Plaintiffs' § 8-1-150 claim fails for want of ripeness.  (Doc. # 38, at 15, 28; Doc. # 42, at 4.)  At the same time, Defendants represent that the "potential legality of the electronic bingo machines operated at Victoryland" is currently pending in "*Jones, et al. v. Macon County Greyhound Park, Inc.*, Macon County Circuit Court, Case No. CV-2010-016."  (Doc. # 42, at 5-6; Doc. # 78, at 11-12.)  Citing *Jones* as support for dismissal for lack of ripeness, Defendants assert that this action is "wholly dependent upon the outcome of other litigation that is presently pending in another court [*i.e.*, in *Jones*]."  (Doc. # 42, at 75.)  Defendants argue that, "[i]f electronic bingo is determined to be legal in Macon County [by the *Jones* court]," they will

---

[6] Because ripeness pertains to federal courts' subject matter jurisdiction, it is properly raised in a Rule 12(b)(1) motion to dismiss.  *Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 807 (11th Cir. 1993).  Here, Defendants' Rule 12(b)(1) motion poses a facial, rather than a factual, attack on the allegations of the Amended Complaint.  *See McElmurray*, 501 F.3d at 1251.  The analysis is, thus, similar to that under Rule 12(b)(6).  *See id.*

[7] In this section on ripeness, collective references to "Defendants" include Cadillac Jack, Mr. McGregor, Victoryland and MMG.

be shielded from liability as to Plaintiffs' § 8-1-150 claim.  (Doc. # 42, at 7; *see also* Doc. # 78, at 11.)

Plaintiffs contend that the fact that the same legal issue is pending in state court litigation does not mean that the legal issue is "premature for this Court's jurisdiction" (Doc. # 58, at 8), "that this case must be dismissed or that this Court must wait on the Macon County case to be appealed to the Alabama Supreme Court" (Doc. # 58, at 12 n.8).  Plaintiffs argue that this court is free to forge ahead and decide the legality of Defendants' machines under Amendment No. 744 (Doc. # 58, at 11-12).  Plaintiffs point out as alternatives the potential use of certification procedures to the Alabama Supreme Court or a stay pending resolution of the state court case.  (Doc. # 58, at 12 n.8.)  Plaintiffs also acknowledge that Defendants "may present a defense to the Section 8-1-150 claims that their machines were not illegal and/or that the Plaintiffs have not yet proved their illegality," but they contend that this defense does not justify dismissal of the Amended Complaint.  (Doc. # 58, at 8-9.)

The parties agree that for Plaintiffs to prevail on their § 8-1-150 claim, Plaintiffs must demonstrate that the relevant electronic bingo machines at Victoryland are illegal under Alabama's constitution or statutes.  If the machines are legal under Alabama law, there is no dispute that § 8-1-150 has no application.  But if the machines are illegal, redress could be appropriate if the other prerequisites of § 8-1-150 are satisfied.  As expected, Plaintiffs and Defendants take opposing positions on the issue of the machines' legality.  Plaintiffs contend that Amendment No. 744 does not permit bingo to be played electronically.  (Doc. # 58, at 4; Am. Compl. ¶ 31.)  On the other hand, Defendants contend that the machines are legal under

11

the rules and regulations promulgated by the sheriff of Macon County, pursuant to the authority given him by Amendment No. 744.  Those rules and regulations, according to one Defendant, define "bingo" to include "electronic, computer, or other technologically-aided bingo games."[8]   (Doc. # 38, at 14.)

The ripeness doctrine, one of the "several strands of justiciability," goes "to the heart of the Article III case or controversy requirement."  *Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1291 (11th Cir. 2010) (citation and internal quotation marks omitted).  "[R]ipeness concerns the timing of the suit," *id.*, and "protects federal courts from engaging in speculation or wasting their resources through the review of potential or abstract disputes," *Digital Props., Inc. v. City of Plantation*, 121 F.3d 586, 589 (11th Cir.1997).  Two factors govern the analysis of ripeness:  "(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration."  *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1335, 1339 (11th Cir. 2005).

Defendants' argument goes to the "fitness" prong.  "A case meets the first prong if it does not involve uncertain or contingent events that may not occur at all (or may not occur as anticipated)."  *Chavez ex rel. M.C. v. N. M. Pub. Educ. Dep't*, 621 F.3d 1275, 1281 (10th Cir. 2010); *see also Muhall*, 618 F.3d at 1291 ("The fitness prong is typically concerned with questions of finality, definiteness, and the extent to which resolution of the challenge

---

[8] These rules and regulations are not part of the record.

depends upon facts that may not yet be sufficiently developed." (citation and internal quotation marks omitted)).

The outcome of Defendants' argument no doubt is appealing – promotion of comity between state and federal judicial tribunals and avoidance of federal intrusion into matters of state law not yet reviewed by the state's highest court.  But, Defendants do not persuade the court that their ripeness argument is the right path for reaching the requested end.  It may be true that whether the electronic bingo machines at issue are legal under Alabama law presents a novel or unsettled issue of state law, but that novelty does not mean that the claim is not ripe.  Defendants, in effect, ask this court to find that a federal court is prohibited on ripeness grounds from deciding a novel issue of state law and must dismiss an action when asked to do so.  No authority has been cited, and the court is aware of none, that holds that a federal action is unripe merely because there exists an uncertainty about state law that is material to providing relief in a federal action.  To the contrary, the obligation of a federal court to adjudicate claims which fall within its jurisdiction is "virtually unflagging."  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989).  And, it is well established that when a federal court applies a state's substantive law and the state's highest court has not spoken on the issue at hand, the federal court "must predict how the highest court would decide [the] case."  *Molinos Valle Del Cibao, C. por A. v. Lama*, Nos. 09-11153, 09-12587, 2011 WL 651996, at *12 (11th Cir. 2011) (published); *see also Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church, Inc.*, 420 F.3d 1317, 1326 n.5

13

(11th Cir. 2005) ("A lack of explicit [state] case law on an issue does not absolve us of our duty to decide what the state courts would hold if faced with it.").

Defendants intermingle ripeness with abstention principles. As stated, Defendants' premise rests principally on considerations of comity to Alabama state courts. Ripeness "may involve prudential considerations of 'comity to state institutions,'" but when it does it becomes "'closely mingled'" with abstention principles. *Crane v. Fauver*, 762 F.2d 325, 328 (3d Cir. 1985) (citation omitted). In *Crane*, it was not necessary to "untangle th[e] doctrinal knot," *id.* at 328; the proper end was achieved by requiring the district court to stay, rather than dismiss, the claims that were not cognizable in the related state court proceedings, *id.* at 329; *see also Planned Parenthood of Cent. N. J. v. Farmer*, 220 F.3d 127, 148 n.11 (3d Cir. 2000) (A contention that a "matter is not ripe for review because a federal court should not attempt to decipher a state statute without the benefit of interpretation by the state courts is better framed as an argument for abstention."). It would be premature to till the different fields of abstention at this time. First, no argument for application of any of the abstention doctrines has been made; hence, the record is devoid of legal analysis. Second, Defendants provide no pleadings or other information about the *Jones* case upon which they rely as the alleged parallel state court litigation. Given these dual reasons, there is an insufficient foundation to decide whether the interest of comity would be served by abstaining for a period of time.

*Blue Cross and Blue Shield of Alabama, Inc. v. Nielsen*, 116 F.3d 1406 (11th Cir. 1997), also provides no support for dismissal based upon a lack of ripeness. Mr. McGregor

and Victoryland cite *Nielsen* for its statement "that it would be irresponsible . . . not to give the Alabama Supreme Court an opportunity to decide the difficult, sensitive, and dispositive Alabama law issues presented in this appeal," *id.* at 1413.  (*See* Doc. # 42, at 6.)  This statement has nothing to do with ripeness.  Rather, the statement is made in the context of recognizing that "[c]ertification of state law issues to state supreme courts is a valuable tool for promoting the interests of cooperative federalism."  *Id.*  In *Nielsen*, the Eleventh Circuit certified unsettled issues of state law to the Alabama Supreme Court.  *See id.* at 1414; *see also Arizonans for Official English v. Arizona*, 520 U.S. 43, 76 (1997) ("Certification procedure . . . allows a federal court faced with a novel state-law question to put the question directly to the State's highest court, reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response.").

Defendants do not ask this court to certify to the Alabama Supreme Court any issues of state law which are "determinative" of the § 8-1-150 claim and upon which there are no "clear controlling precedents in the decisions of the Supreme Court of [Alabama]."  Ala. R. App. P. 18(a) (delineating procedures for certifying questions from federal courts).  In any event, even if it had been requested, certification would not be appropriate at this time on what Plaintiffs say is the "discrete legal issue" – *i.e.*, whether Defendants' electronic bingo machines are legal under Amendment No. 744.  (Doc. # 58, at 12.)  Namely, there is an absence of an evidentiary or stipulated record as to exactly how the machines operated or the business arrangements under which they operated.  *See, e.g., Currie v. Group Ins. Comm'n*, 290 F.3d 1, 13 (1st Cir. 2002) ("On more than one occasion, state high courts have returned

certified questions unanswered, because the factual record was undeveloped on the state law question or because there was a risk that its opinion would be merely advisory." (collecting cases)). Suffice it to say that *Nielsen* clearly does not support dismissal of Plaintiffs' § 8-1-150 count on ripeness grounds.

In further support of their contention that the § 8-1-150 claim nonetheless rests upon contingent future events, Cadillac Jack, Mr. McGregor and Victoryland cite *Lincoln House, Inc. v. Dupre*, 903 F.2d 845 (1st Cir. 1990). (*See* Doc. # 42, at 6; Doc. # 38, at 14-15.) Cadillac Jack also cites *Jackson v. Sedgwick Claims Management Services, Inc.*, No. 09-11529, 2010 WL 931864 (E.D. Mich. March 11, 2010). (*See* Doc. # 38, at 14-15.) In *Jackson*, a RICO action, the claims were based upon an employer's alleged scheme to wrongfully deny workers' compensation benefits for on-the-job injuries. *See* 2010 WL 931864, at *4-5. The court found that the claims were not ripe to the extent that any plaintiff's claims for benefits were pending before the state of Michigan's Workers Compensation Disability Board. *Id.* at *21. *Jackson* is distinguishable because the state's Workers Compensation Disability Board had "exclusive jurisdiction over the issue of entitlement to workers' compensation benefits." *Id.* at *14. Here, exclusive jurisdiction over the state law claim does not lie with the state court.

In *Dupre*, "the only injury alleged by [the plaintiff] [was] its hypothetical inability to recover from [the defendant], *if* [the plaintiff] obtain[ed] a judgment, in some amount, in the pending state court breach of contract action." 903 F.2d at 847; *see also id.* at 847 n.2 (noting that there was not an independent claim alleged that the defendant broke the

16

contract).  *Dupre* boiled down to an anticipatory indemnification or contribution claim brought prior to the resolution of the separate suit for liability.  It is true that, typically, contribution and indemnity suits brought in anticipation of liability are not ripe until the obligation to pay in the underlying separate suit has been established by a judgment or settlement.  At least one court has relied upon *Dupre* for that very proposition.  *See Hecht v. Summerlin Life & Health Ins. Co.*, 536 F. Supp. 2d 1236, 1241 (D. Nev. 2008) (citing *Dupre* for support that "courts often find claims for indemnification or contribution are not ripe because the claims are contingent on a finding of liability on the underlying claim").  But, it is hard to envision how *Dupre* and the other similar cases cited by Defendants apply here.  Plaintiffs do not bring an indemnity or contribution action premised on potential liability in a separate pending state court action, as in *Dupre*.  Defendants also do not articulate any way in which *Dupre* is analogous to this case.  Indeed, Defendants provide no analysis whatsoever of *Dupre*.

No persuasive argument or relevant analogy having been presented by Defendants, the court declines to dismiss the § 8-1-150 count as not ripe for adjudication.

### 2.  *Joint and Several Liability*

Some Defendants contend that there is no joint and several liability under § 8-1-150, relying principally upon *Motlow v. Johnson*, 39 So. 710 (Ala. 1905).  (Doc. # 38, at 31-32; Doc. # 40, at 9; Doc. # 42, at 7.)  They argue or strongly suggest that the entire § 8-1-150 claim is due to be dismissed *to the extent* that the Amended Complaint alleges joint and

several liability.  (*See, e.g.*, Doc. # 38, at 28 (arguing that Plaintiffs' § 8-1-150 claim fails "because § 8-1-150 does not allow for joint liability").)

First, and most important, there are no allegations of joint and several liability in the Amended Complaint.  (*See* Am. Compl. ¶¶ 40-44; *see also* Doc. # 58, at 7, in which Plaintiffs provide that the allegations do "not mean that [they] seek to impose joint and several liability on the Defendants; the words 'joint and several' are not alleged in the complaint").)  Second, even if Plaintiffs expressly had demanded that any § 8-1-150 judgment be paid jointly and severally by Defendants, *Motlow* does not stand for the principle that the entire claim would have to be extinguished.  Whether defendants are jointly and severally liable is more appropriately a question of remedy, rather than an element of the claim.  It is notable also that *Motlow* stood in a different posture than this case.  The holding was made based upon the *evidence* underlying the final judgment; it was not based upon the pleadings at the motion to dismiss stage. For these reasons, Defendants' argument is unpersuasive as a ground for dismissal of the Amended Complaint.

### 3.   *Failure to Plead a Plausible Claim for Relief Against the Manufacturers*

Relying upon Rule 12(b)(6), the manufacturers also attack the adequacy of the allegations supporting the § 8-1-150 claim.[9]  They argue that there are no specific allegations

---

[9] References to "manufacturers" encompass Cadillac Jack, IGT, MMG, BGI, and Nova.  In the Amended Complaint, Plaintiffs refer to Cadillac Jack, IGT, MMG, BGI and Nova as owners and operators of the electronic bingo machines.  (Am. Compl. ¶¶ 11-13, 15-16.)  On the other hand, in a brief, MMG calls itself a "machine manufacturer."  (Doc. # 78, at 7.)   At this stage, there are only allegations, and the facts are not developed as to the business relationships among the various Defendants or as to the nature of Cadillac Jack's, IGT's, MMG's, BGI's and Nova's activities in connection with the electronic bingo operations at Victoryland.  Accordingly, in this opinion, Cadillac Jack, IGT, MMG, BGI and Nova are referred to collectively as "manufacturers" for the sake of convenience and not as a term of legal

that Plaintiffs lost money by playing an electronic bingo machine supplied by any particular manufacturer.  (Doc. # 38, at 29; Doc. # 44, at 6-7; Doc. # 46, at 6-7; Doc. # 78, at 8-10). In IGT's words, "[t]he ultimate deficiency in the Plaintiffs' complaint is the absence of any factual allegation that they actually played and lost on IGT machines."  (Doc. # 65, at 3.) The manufacturers allege that it is equally plausible or possible that Plaintiffs' losses occurred on an electronic bingo machine supplied by another Defendant (Doc. # 38, at 30; Doc. # 44, at 7; Doc. # 46, at 7; Doc. # 65, at 3), and that Plaintiffs improperly "lump[ ]" Defendants together (Doc. # 65, at 3; Doc. # 66, at 5; Doc. # 78, at 10).  In short, Defendants contend that under *Twombly*, the facts pleaded are insufficient to "state a claim to relief that is plausible on its face."  550 U.S. at 570.

The manufacturers' arguments are colorable, but not meritorious.  The Amended Complaint pleads more than collective accusations.  There are allegations that Plaintiffs played electronic bingo machines that were owned and operated by each manufacturer.[10] (Am. Compl. ¶ 27 (listing manufacturers).)  There also are allegations that Plaintiffs lost money playing those electronic bingo machines and paid their losses to the manufacturers. (*See* Am. Compl. ¶¶ 1, 44.)  Even if the facts fall at the lesser end of the descriptive continuum, the favorable inferences drawn from the allegations show wagers placed, wagers lost to the manufacturers, and money paid to the manufacturers.  The alternative explanation

_____

significance.

[10] No manufacturer alleges that its electronic bingo machines were not present and available for play at Victoryland during the relevant time period.

offered by each manufacturer (*i.e.*, that the machine played was not "mine") is not so obvious and overwhelming as to render the claim no longer plausible.

Moreover, dismissal is not appropriate based upon the argument that the Amended Complaint "make[s] no allegation as to how much money was retained by each individual Defendant from each individual Plaintiff." (Doc. # 40, at 9 (citations to authority include *Funliner of Ala., L.L.C. v. Pickard*, 873 So. 2d 198 (Ala. 2003)). This argument steps into the realm of proof, not pleading. *Funliner* supports, rather than contradicts, this point. *See* 873 So. 2d at 209 (finding class certification inappropriate and observing that under § 8-1-150, "in order *to recover* the plaintiffs must establish, on an individual basis, the amount they lost to the defendants" (emphasis added)); *see also Avitia v. Metro. Club. of Chicago, Inc.*, 49 F.3d 1219, 1226 (7th Cir. 1995) ("A plaintiff is not required to itemize his damages claims in his complaint."). Furthermore, at least two manufacturers recognize, and appropriately so, that the specific amount of the gambling losses attributable to each manufacturer does not have to be alleged. (Doc. # 63, at 2; Doc. # 64, at 1.)

Based upon the foregoing, the Amended Complaint pleads a plausible claim for relief under § 8-1-150. Dismissal for failure to plead a plausible claim is not warranted.

### 4. *Failure to Allege a Contract Between Plaintiffs and the Manufacturers*

MMG also argues that Plaintiffs fail to sufficiently allege the existence of a contract between any Plaintiff and a manufacturer. (Doc. # 78, at 5-8; *see also* Doc. # 40, at 9 (IGT's brief); Doc. # 38, at 28 (Cadillac Jack's brief).) MMG contends that the "Alabama Supreme Court has recognized the existence of a gaming contract *only* between the patron and the

casino." (Doc. # 78, at 7.)  For this contention, MMG relies upon *Macon County Greyhound Park, Inc. v. Knowles*, 39 So. 3d 100 (Ala. 2009), and *Knowles*'s observation that "the general rule is that '[c]asino-style wagering is essentially an *adhesion* contract between the casino and its patrons,' that is, 'the casino defines the terms of the contract (the rules of the wager) and allows patrons to play the game as-is, with *no possibility of changing the rules.*'" *Id.* at 110 (quoting Anthony Cabot & Robert Hannum, *Advantage Play and Commercial Casinos*, 74 Miss. L.J. 681, 722 (2005)); (*see* Doc. # 78, at 7-8.)

In *Knowles*, the plaintiff brought a breach of contract claim against MCGP for its failure to pay her a multimillion dollar jackpot allegedly won playing an electronic bingo machine at Victoryland.  *Id.* at 106.  The issue in *Knowles* was not who can and cannot be a party to a casino-style gaming contract.  That issue was not explored.  Nor was the alleged manufacturer of the electronic bingo machine even a defendant.  *See id.* at 104, 106.  Rather, the issue was whether the terms of a gambling contract between the sole Defendant, MCGP, and its patron encompassed the rules of the wager incorporated into the help screens and pay tables of the electronic bingo machine (as argued by MCGP), or only the sheriff's regulations (as argued by the plaintiff).[11]  *See id.* at 106.  MMG's reliance on *Knowles* for the contention that there are no plausible facts upon which a "machine manufacturer, such as [MMG]," can be a party to a casino-style wagering contract is not persuasive.  (Doc. # 78, at 7.)  Here, the

---

[11]  In *Knowles*, "the *parties agree[d]* that Amendment No. 744 remove[d] impediments to the enforceability of th[e] contract."  39 So. 3d at 107 (emphasis in original).  Hence, the court "express[ed] no opinion as to whether Amendment No. 744 *actually does* authorize the type of activity here involved [*i.e.*, the play of electronic bingo machines at Victoryland]."  *Id.* at 107 n.1.

allegations, and favorable inferences derived therefrom, reveal wagers paid to MMG, IGT, Cadillac Jack, Nova and BGI as consideration for playing Defendants' electronic bingo machines and wagers lost playing those electronic bingo machines.  (*See* Am. Compl. ¶¶ 1, 27, 44.)  These allegations sufficiently allege wagering contracts with the manufacturers, money lost as a result of the wagering contracts, and money paid to the manufacturers.  Absent further legal analysis and given that Plaintiffs allege that the gambling debts they paid to the manufacturers were wagers, MMG's argument does not warrant Rule 12(b)(6) dismissal of the § 8-1-150 claim.[12]

**B.**     **The Tribe's Motion to Dismiss Based Upon Sovereign Immunity**

The Tribe asserts that it has sovereign immunity from suit and relies on Rule 12(b)(6) as the basis for dismissal.  (Doc. # 86, at 1.)  It says that it is a "political subdivision and formed by ordinance of the Miami Tribe of Oklahoma, a federally recognized Indian government which possesses sovereign immunity from unconsented suit."  (Doc. # 86 at 1; Doc. # 87, at 1, 2.)  Because Plaintiffs fail to plead any explicit waiver of the Tribe's

---

[12] While the claim is going forward, Plaintiffs' bifurcated view of § 8-1-150(a) is perplexing. (*See* Doc. # 58, at 5.)  Wagers are contracts, and wagers are what are alleged.  (Am. Compl. ¶ 44); *see Thornhill v. O'Rear*, 19 So. 382, 383 (Ala. 1896) ("A wager is nothing more than a bet, by which two parties agree that a certain sum of money, or other thing shall be paid or delivered to one of them on the happening or not happening of an uncertain event." (citation and internal quotation marks omitted)); *see also* Black's Law Dictionary 1091 (6th ed. 1991) (defining "wager" as "[a] contract by which two or more parties agree that a certain sum of money or other thing shall be paid or delivered to one of them or that they shall gain or lose on the happening of an uncertain event or upon the ascertainment of a fact in dispute, where the parties have no interest in the event except that arising from the possibility of such gain or loss").  Plaintiffs' assertion that "the existence of a contract between the parties is not an essential element of a claim under [§] 8-1-150" is wrong.  (Doc. # 58, at 6 n.5.)  In other words, each Plaintiff has the burden of proving a wager between he or she and each Defendant.

sovereign immunity (Doc. # 87, at 2, 3) or to otherwise address the Tribe's sovereignty (Doc. # 87, at 5), the Tribe says that dismissal on the ground of sovereign immunity is mandated.

Tribes are "subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.* 523 U.S. 751, 754 (1998). "When Congress intends to abrogate tribal sovereign immunity, it must do so expressly, with clear and unequivocal language." *Freemanville Water Sys., Inc., v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1208 (11th Cir. 2009). Furthermore, "to relinquish its immunity, a tribe's waiver must be 'clear.'" *C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 418 (2001) (quoting *Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla.*, 498 U.S. 505, 509 (1991)).

Based upon these principles, Plaintiffs do not dispute that generally the Tribe is entitled to sovereign immunity. (Doc. # 96, at 3.) Nor do they contend that the Tribe's sovereign immunity has been abrogated by any federal statutory directive. They do contend, however, that the Tribe "likely waived" its sovereign immunity when it contracted with Alabama parties to provide the electronic bingo machines (Doc. # 96, at 5-6), and that, at a minimum, they need to conduct discovery to discern whether the Tribe contractually waived any claim it may have to sovereign immunity (Doc. # 96, at 6).

A threshold issue is how to treat the Tribe's motion to dismiss, made pursuant to Rule 12(b)(6). Because sovereign immunity goes to subject matter jurisdiction, Rule 12(b)(1), not Rule 12(b)(6), is the correct procedural device for addressing the Tribe's challenge. *See Thomas v. U.S. Postal Serv.,* 364 F. App'x 600, 601 (11th Cir. 2010) (citing *Bennett v.*

23

*United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996)).  Accordingly, the court will construe the Tribe's motion to dismiss as seeking dismissal pursuant to Rule 12(b)(1), rather than Rule 12(b)(6).

This does not entirely resolve the threshold issue because a Rule 12(b)(1) challenge can be either a facial or a factual challenge to subject matter jurisdiction.  As stated elsewhere in this opinion, a facial challenge gives a plaintiff "safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised."  *McElmurray*, 501 F.3d at 1251 (citation and internal quotation marks omitted).  That is, the analysis is confined to the allegations in the complaint, and all well-pleaded allegations are accepted as true.  *See id.*  A factual attack, on the other hand, challenges the substance of the jurisdictional allegations, and, thus, matters outside the pleadings are considered.  *See Lawrence*, 919 F.2d at 1529.

Here, the Tribe in effect renounces reliance on evidence outside the four corners of the Amended Complaint, by attempting to proceed under Rule 12(b)(6).  Additionally, no extrinsic evidence is relied upon by the parties.  The court, therefore, will treat the Tribe's motion as a Rule 12(b)(1) facial attack and limit the analysis to the four corners of the Amended Complaint.

In the Amended Complaint, subject matter jurisdiction is predicated on 28 U.S.C. § 1332(d)(2).  Hence, Plaintiffs contend that this is a class action in which the matter in controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and minimal diversity exists (meaning that at least one plaintiff is diverse in citizenship from at least one

defendant).  The Amended Complaint pleads the requisite amount in controversy (Am. Compl. ¶ 28), and Plaintiffs allege that they are from different states than all but one of the Defendants.  (Am. Compl. ¶¶ 2-8, 11-16.)  The amount in controversy and minimal diversity requirements are not challenged by the Tribe.  On its face, the Amended Complaint suffices to give the Tribe notice of the jurisdictional grounds that are being asserted.

Notwithstanding the Amended Complaint's jurisdictional allegations, the Tribe contests the allegation that it is an "Oklahoma corporation."  (Am. Compl. ¶ 14.)  The Tribe asserts that it is "not a state corporation" at all.  (Doc. # 87, at 1.)  Rather, it says that it is a "political subdivision" (Doc. # 86, at 1) and was "formed by ordinance of the federally recognized Miami Tribe of Oklahoma in 1999 to act as a government branch of the Miami Tribe and pursue financial opportunities to benefit the Miami Tribe" (Doc. # 87, at 1).  The Tribe does not cite the ordinance upon which it relies or any authority that would permit the court to ignore the Amended Complaint's allegations of the Tribe's corporate status on a facial Rule 12(b)(1) motion.

Even if this court were to treat the Rule 12(b)(1) motion as a factual attack, dismissal would not be appropriate.  Although the Tribe is correct that a plaintiff "bears the burden of proving the court's jurisdiction," the general rule is that "the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction."  *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984) (citing, among others, *Williamson v. Tucker*, 645 F.2d 404, 414 (5th Cir. 1981) ("[T]he district court must give the plaintiff an opportunity for discovery and for a hearing that is appropriate to the nature of the

25

motion to dismiss" for lack of subject matter jurisdiction.)).  This is particularly true "where the facts are peculiarly within the knowledge of the opposing party."  *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

Plaintiffs contend that, without the benefit of discovery, they cannot ascertain whether the Tribe "waived sovereign immunity by contract or other agreement" (Doc. # 96, at 3) because they are not in the possession of any contracts (Doc. # 96, at 6).  The court takes no position on whether, as Plaintiffs assert, discovery "most likely" will prove a contractual waiver of sovereign immunity as to Plaintiffs' claim against the Tribe.  (Doc. # 96, at 6.)  It is noted, though, that the existence of such a contract is neither admitted nor denied by the Tribe.  All of this is why, without discovery, it would be inappropriate at this time to determine the issue of sovereign immunity on a factual Rule 12(b)(1) motion.  Accordingly, the Tribe's motion to dismiss based upon sovereign immunity is due to be denied at this time.

## V.  CONCLUSION

Accordingly, it is ORDERED that the motions to dismiss, filed by Defendants Cadillac Jack, Inc. (Doc. # 74), IGT (Doc. # 75), Macon County Greyhound Park and Milton E. McGregor (Doc. # 76), Multimedia Games, Inc. (Doc. # 77), Bally Gaming, Inc. (Doc. # 82), and Nova Gaming, LLC (Doc. # 83) are DENIED.

It is further ORDERED that the Miami Tribe of Oklahoma Business Development Authority's motion to dismiss based upon sovereign immunity (Doc. # 86) is DENIED without prejudice, with leave to renew under Rule 12(b)(1), if and when appropriate.

DONE this 31st day of March, 2011.

                           /s/ W.  Keith Watkins
                        UNITED STATES DISTRICT JUDGE