IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

DOLLIE WILLIAMS, *et al.*,        )
                                  )
            Plaintiffs,           )
                                  )
    v.                            )    CASE NO. 3:10-CV-191-WKW
                                  )              [WO]
MACON COUNTY GREYHOUND            )
PARK, INC., *et al.*,             )
                                  )
            Defendants.           )

**MEMORANDUM OPINION AND ORDER**
**CERTIFYING RULE 23(b)(3) CLASS**

Plaintiffs bring this putative class action pursuant to § 8-1-150(a) of the

Alabama Code, seeking to recoup money they lost playing electronic bingo machines

at Victoryland in Macon County, Alabama.  Defendants are Victoryland, its president,

and several manufacturers of electronic bingo machines.   Before the court is

Plaintiffs' Motion for Class Certification (Doc. # 216), which has been fully briefed

and is ready for adjudication.  Based upon counsel's arguments, the relevant law, and

the record as designated, Plaintiffs' motion is due to be granted.

## I. JURISDICTION AND VENUE

Subject matter jurisdiction is exercised pursuant to 28 U.S.C. § 1332(d)(2).

Personal jurisdiction and venue are not contested.

## II.  BACKGROUND

The facts and much of the procedural history of this case, including the history of both electronic bingo operations at Victoryland and Amendment No. 744 to the Alabama Constitution, are set out in the court's prior opinion.  *See Williams v. Macon Cnty. Greyhound Park, Inc.*, No. 10cv191 (M.D. Ala. Mar. 31, 2011) (order denying motion to dismiss) (*Williams I*).  The court will not repeat that background here, except as needed to bring this case forward to its present posture.

Following *Williams I*, there has been a paring down of the parties.  At the lawsuit's commencement, there were seven Plaintiffs.  Now there are three: (1) Dollie Williams; (2) David M. Palmer II; and (3) Robin Paige.  Additionally, several of the machine manufacturers have been dismissed along the way, leaving the number of Defendants at five, instead of ten.  Defendants are: (1) Macon County Greyhound Park, Inc.; (2) Milton E. McGregor; (3) Multimedia Games, Inc.; (4) IGT; and (5) Bally Gaming, Inc.

Moreover, the Complaint, originally filed March 4, 2010, now is in its third iteration.  Post-*Williams I*, Plaintiffs amended the Complaint to narrow the class definition in accordance with discovery:

> All persons who paid to play "bingo" at Victoryland or Quincy's 777 casino on one of Defendants' electronic gaming machines, who had player cards issued to them by a Defendant (or one of its agents) which recorded their names and gaming history, and who lost money during

2

the period beginning September 4, 2009 to the present while playing one of Defendants' electronic bingo machines at Victoryland or Quincy's 777 casino.

Excluded from the class are those individuals who have filed an individual lawsuit on their own behalf concerning these claims; the officers, directors and employees of the Defendants, and the immediate families of any such person; and all judicial officers of the United States who preside over or hear this case, as well as all persons who are related to them as specified in 28 U.S.C. § 455(b)(5).

(2nd Am. Compl. ¶ 31.)

In their motion for class certification, Plaintiffs further refined the scope of the class, as pertains to the first paragraph above, to include:

All persons who, at any time during the period beginning September 4, 2009 through and including February 1, 2010, used their Q-Club cards and lost money or value while playing electronic "bingo" at Macon County Greyhound Park, commonly known as Victoryland.

(Doc. # 216, at 1–2.)  As an explanation for the additional narrowing of the class, Plaintiffs provide:  "Because of the difficulty of proof, wagers made by cash or any other means other than Q-Club cards (for which Defendants maintained detailed records of wagers) are not addressed by this litigation and are not included in the class definition."  (Doc. # 217, at 17 n.13.)  Plaintiffs also restricted the class period to five months, instead of six, based upon Victoryland's "shutdown" during February 2010.  (Doc. # 217, at 17 n.3.)

The sole claim remains one for relief under § 8-1-150(a) of the Alabama Code, a statute that prohibits the enforcement of a contract giving rise to a gambling debt.[1] Count I alleges that Defendants' electronic bingo machines are "illegal gambling devices" (2d Am. Compl. ¶ 40) in violation of Alabama law, that Plaintiffs "paid to play and did play" those machines during the requisite time period (2d Am. Compl. ¶ 41), and that Defendants' "operation of illegal bingo games" proximately caused their injuries (2d Am. Compl. ¶ 42).  Plaintiffs seek to recover "all monies they lost playing on illegal bingo gaming machines" for the six months (now five months) preceding the filing of the original Complaint.  Plaintiffs also request a declaration that "Defendants' electronic bingo devices [are] illegal under Alabama law." (2d Am. Compl. (prayer for relief).)

## III.  STANDARD OF REVIEW

The textual source governing motions for class certification is Rule 23 of the Federal Rules of Civil Procedure, which presents "'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, No. 11-864, slip op. at 5 (U.S. Mar. 27, 2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "To come within the exception,

---

[1] Section 8-1-150(a) provides that "[a]ll contracts founded in whole or in part on a gambling consideration are void.  Any person who has paid any money or delivered any thing of value lost upon any game or wager may recover such money, thing, or its value by an action commenced within six months from the time of such payment or delivery."

a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, ____, 131 S. Ct. 2541, 2551 (2011)).

Rule 23 has both implied and express requirements. As an implied requirement, a representative plaintiff must demonstrate that a proposed class is "'adequately defined and clearly ascertainable.'" *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). "An identifiable class exists if its members can be ascertained by reference to objective criteria." *Fogarazzo v. Lehman Bros., Inc.*, 263 F.R.D. 90, 97 (S.D.N.Y.2009). The analysis of the objective criteria also should be administratively feasible. "Administrative feasibility" means "that identifying class members is a manageable process that does not require much, if any, individual inquiry." *Newberg on Class Actions* § 3.3 p. 164 (5th ed. 2012). Where a plaintiff satisfies this threshold issue, the district court then "conducts a rigorous analysis of the [R]ule 23 prerequisites." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1266 (11th Cir. 2009) (citation and internal quotation marks omitted).

Rule 23(a) establishes four express prerequisites to a class action:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or

defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  "Those four requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation." *Little*, 691 F.3d at 1304 (citation and internal quotation marks omitted).

The class also must satisfy one of Rule 23(b)'s three requirements.  Plaintiffs proceed under Rule 23(b)(3), which examines whether "questions of law or fact common to class members predominate over any questions affecting only individual members" and whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Rule 23 analysis, although not a merits one, should implicate the "'merits of the case to the degree necessary to determine whether the requirements of Rule 23 will be satisfied.'"  *Vega*, 564 F.3d at 1266 (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1188 n.15 (11th Cir. 2003)).  In fact, the usual Rule 23(a) analysis "will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped."  *Wal-Mart Stores*, 131 S. Ct. at 2551.

## IV.  DISCUSSION

Plaintiffs have moved for an order allowing them to represent a class on claims brought pursuant to § 8-1-150(a).  They seek certification under Rule 23(b)(3).  Defendants object to class certification.  The court addresses each of the implied and

6

express requirements of Rule 23 in turn and finds that class certification is appropriate.

A.    **Ascertainability**

Plaintiffs satisfy Rule 23's implied requirement.  They have defined an ascertainable class.[2]  That class consists of those individuals who, between September 4, 2009, and February 1, 2010, "used their Q-Club cards and lost money or value while playing electronic 'bingo'" at Victoryland.  This definition provides objective criteria for determining who is a member of the class:  (1) a Victoryland patron, (2) who, while using his or her Q-Club card, (3) lost money (4) playing a Bally, IGT, or Multimedia electronic bingo machine (5) between September 4, 2009, and February 1, 2010.

Additionally, the objective criteria can be analyzed in a manageable and administratively feasible way, namely, by reference to Victoryland's records.  During

---

[2] Finding no prejudice to Defendants, the court permits Plaintiffs to rely on the current refinement of the proposed class definition set out in their class certification motion and adopts it with one modification as explained.  The revised definition does not expand the class, but restricts it in two ways.  First, there is temporal tightening of the class period from six months to five months.  Second, the revised definition narrows the class to Victoryland patrons whose electronic bingo losses were recorded through the use of Q-Club cards.  This narrowing clarifies what may previously have been ambiguous:  The class does *not* include Victoryland patrons who suffered losses playing electronic bingo machines when they were *not* using a Q-Club card.  However, because Defendants continue to object that the conjunction "and" − "used their Q-Club cards *and* lost money − included "un-carded" play, the court modifies the definition to read "while using their Q-Club cards, lost money."  *Cf.* Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment.").

the putative class period, Victoryland used IGT's Advantage System, which collected gaming data based upon the Q-Club card number assigned to the patron.  The Q-Club card data reveals those individuals who suffered a "session" loss while playing electronic bingo on certain Bally, IGT, or Multimedia electronic bingo machines at Victoryland during the specified time frame.[3]  A "session" commenced when a patron inserted a Q-Club card into the electronic bingo machine's add-on device and ended upon the removal of the Q-Club card from the device.  For each session, the Advantage System recorded the Q-Club member identification number, the specific machine played, the number of games played on that machine, the date and time of play, the dollar amount of purchases and prizes, and the amount of the "win" for the house.

Not surprisingly, Defendants disagree that the class is ascertainable and identifiable, and the court has considered their plethora of arguments.  Many arguments overlap with arguments challenging Rule 23's express elements and are more appropriately addressed in that context.  Some rest on the premise that Plaintiffs' class definition is not sufficiently worded to limit the class to only losses

---

[3] A Q-Club card did not allow its holder to pay for electronic bingo games either by credit or withdrawal.  In other words, it was not akin to a credit or debit card.  Rather, patrons who signed up for a Q-Club card did so voluntarily and then could use the card during their play to obtain perks, such as free meals, based upon the amount of their play.  VictoryLand used the data from IGT's Advantage System for demographic purposes, for example, to create "heat maps" showing where players who were using Q-Club cards lived.  (Doc. # 225, at 8.)

electronically tabulated based upon Q-Club card play.  Those arguments now lack foundation based upon the elimination of the conjunction "and."[4]  Other of the arguments attempt to add criteria to the class definition that would require individual factual inquiries, for example, to weed out players who played electronic bingo machines with borrowed Q-Club cards, but these criteria delve too deeply and unnecessarily into the merits.  Defendants have cited no authority that an ascertainable class must guarantee that all of its members ultimately will prevail. Defendants set the standard too high.  Suffice it to say, none of Defendants' arguments prevent a finding that Rule 23's implied requirement is met.  Plaintiffs' class definition, as modified by the court, allows the putative class members to be ascertained based upon objective, administratively feasible criteria.

**B.     The Rule 23(a) Requirements**

*1.     Numerosity*

The first requirement under Rule 23(a) requires a putative class that is "so numerous that joinder of all members is impracticable."  Fed R. Civ. P. 23(a)(1). "Generally, a class should have no fewer than 21 members, and will generally satisfy

---

[4] Along the same lines, Defendants have argued both that Plaintiffs cannot achieve an ascertainable class if the losses include "non-carded" play, and that Plaintiffs cannot limit losses to only Q-club card losses because Q-Club card losses may not represent a patron's actual losses. But that misses the point that Plaintiffs do not seek actual losses in this lawsuit.  Defendants cite no authority that would preclude Plaintiffs' litigation strategy of restricting § 8-1-150(a) claims for recovery to only Q-Club card losses (presumably to achieve an ascertainable class).

the numerosity requirement if it has more than 40." *Martinez v. Mecca Farms, Inc.*, 213 F.R.D. 601, 605 (S.D. Fla. 2002).

Approximately 270,000 individuals had Q-Club cards between September 4, 2009, and February 1, 2010.  Based upon the sheer volume of Q-Club cardholders during the class period, Defendants cannot (and do not) seriously contest that a sufficient number of unidentified class members exist to satisfy the numerosity requirement.  Considering the relatively low threshold to meet the numerosity requirement and the obvious practical difficulties of the joinder of hundreds and potentially thousands of individual litigants, the court agrees.  The proposed class easily fulfills the numerosity requirement.

### 2. *Commonality*

As to the commonality requirement, "[a] class may be certified only if 'there are questions of law or fact common to the class.'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting Fed. R. Civ. P. 23(a)(2)).  There must be "at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Id.* (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)); *see also Wal–Mart*, 131 S. Ct. at 2556 ("Even a single [common] question will do." (citation and internal quotation marks omitted)).

There undisputedly is a legal question common to the class.  That question is whether the electronic bingo operation at Victoryland was "in fact an illegal operation of electronic gambling machines" under Alabama law.  (2d Am. Compl. at 1.)  This legal issue resonates throughout the Second Amended Complaint in various forms.[5] And it is essentially dispositive on the issue of liability, namely, whether Plaintiffs and the putative class members may recover their losses under § 8-1-150(a) of the Alabama Code.  Plaintiffs face no hurdles in satisfying Rule 23(a)(2).

### 3.      *Typicality*

"Typicality, along with the related requirement of commonality, focuses on whether a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification." *Piazza v. Ebsco Indus., Inc.*, 273 F.3d 1341, 1346 (11th Cir. 2001).  A sufficient nexus exists "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010) (citation and internal quotation marks omitted).  Even "substantial factual differences" among class

---

[5] (*See* 2d Am. Compl. ¶ 24 ("Defendants have operated bingo games with electronic devises which are slot machines prohibited by Alabama law."); 2d Am. Compl. ¶ 28 (The "illegal electronic bingo devices, and the games being conducted by the Defendants are illegal under the Alabama Constitution and statutory laws applicable to these devices."); 2d Am. Compl. ¶ 29 ("[T]he Defendants' electronic bingo machines cannot play or offer the opportunity to play the game commonly known as bingo").)

members will not defeat the typicality requirement "when there is a 'strong similarity of legal theories.'" *Williams*, 568 F.3d at 1357.

The nexus requirement is satisfied.  The named Plaintiffs and putative class members bring claims predicated on allegations that they lost money playing specified electronic bingo machines at Victoryland while using a Q-Club card.  The course of events is the same.  The named Plaintiffs and putative class members also seek to recover their monetary losses from Defendants based upon similar legal arguments.  As stated, the backbone of the § 8-1-150 claim is that the electronic bingo operation at Victoryland was an illegal gambling operation, thereby entitling Plaintiffs to recover the money they lost on their wagers.  There is a sufficient nexus between the claims of the class representatives and those of the class members at large to satisfy the typicality requirement.

Defendants argue otherwise, but their arguments simply lack force to defeat the typicality finding.  For example, as part of their typicality challenge, Defendants contend that none of the named Plaintiffs has a claim against all three machine manufacturers.  But this type of challenge appeals more to standing.  *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1321 (11th Cir. 2008) (providing that to obtain a class certification named Plaintiff must have standing).  And as a matter of standing, the argument is flawed.  "In a class action suit with multiple claims, at least one

named class representative must have standing with respect to each claim." *Newberg on Class Actions* § 2.4 p. 72 (5th ed. 2012).  Collectively, Plaintiffs have claims against all machine manufacturers.  Plaintiffs, therefore, have standing.

### 4.    *Adequacy of Representation*

The adequacy-of-representation requirement has two components:  the adequacy of class counsel and the adequacy of the class representatives.  No Defendant specifically challenges the adequacy of counsel of record to prosecute this action.  Having independently considered Rule 23(a)(4), in conjunction with the factors in Rule 23(g), the court finds that Plaintiffs' counsel are qualified and competent to represent this class and are capable of vigorously prosecuting the class's interests.

This leaves the Rule 23(a)(4) requirement "that the representative party in a class action [be able to] adequately protect the interests of those he purports to represent." *Valley Drug Co.*, 350 F.3d at 1189 (citation and internal quotation marks omitted) (brackets added).  In that respect, "[t]he adequacy-of-representation requirement 'encompasses two separate inquiries:  (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'"  *Busby*, 513 F.3d at 1323 (quoting *Valley Drug Co.*, 350 F.3d at 1189).  Relevant to the second inquiry is the

class representative's knowledge of the case.  *See Weekes-Walker v. Macon Cnty.*
*Greyhound Park, Inc.*, 281 F.R.D. 520, 527 (M.D. Ala. 2012).

Defendants focus on the alleged inadequacy of Plaintiffs' ability to protect the interests of absent class members.  None of the arguments demonstrates a fundamental conflict between the interests of Plaintiffs and the class members, however.  *See Valley Drug Co.*, 350 F.3d at 1198 (distinguishing between "fundamental" and "minor" conflicts of interest, the latter of which does not preclude class certification).  For example, the idea that one player's loss is another player's win, so as to create competing player interests in the same money, is artificial.  A player's loss is a win to the house, and what the house does with its winnings does not thereafter create a conflict, at least not in the manner contemplated by *Valley Drug* and upon which Defendants rely. (*See, e.g.*, Doc. # 225, at 35); *Valley Drug*, 350 F.3d at 1189 ("A fundamental conflict exists where some party members claim to have been harmed by the same conduct that benefitted other members of the class.").

Other conflict arguments may be persuasive for different reasons at the merits or damages phases (*e.g.*, arguments with respect to "net losses" and Plaintiffs' continued electronic bingo play after the filing of this lawsuit).  But these arguments do not affect the named Plaintiffs' adequacy at the class certification stage.  *See, e.g.,*

*Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003) ("Mere speculation as to conflicts that may develop at the remedy stage is insufficient to support denial of initial class certification." (citation and internal quotation marks omitted)). The court does not perceive any fundamental or substantial conflicts of interest, and Defendants have not identified any.

Defendants also argue that Plaintiffs' deposition testimony reveals their general unfamiliarity with the nature of the claims and whom they have sued. The class representative's knowledge of the case, however, need not be "robust." *Newberg on Class Actions* § 3:67, p. 377 (5th ed. 2012). In *Surowitz v. Hilton Hotel Corp.*, 383 U.S. 363 (1966), the Supreme Court held that the plaintiff was an adequate class representative, even though she "had a very small degree of knowledge as to what the lawsuit was about, . . . did not know any of the defendants by name, . . . [and] did not know the nature of their alleged misconduct." *Id.* at 366; *see also Newberg on Class Action*s § 3:67, p. 377 (5th ed. 2012) (The *Surowitz* Court "implied that a representative plaintiff need know little about the underlying case." (internal footnote omitted)). Even though the named Plaintiffs do not understand all of the factual and legal intricacies of their case, the court finds that they have sufficient knowledge of this action such that they can "adequately prosecute the action." *Busby*, 513 F.3d at 1323.

Plaintiffs satisfy, therefore, Rule 23(a)(4)'s adequacy requirement.  In sum, Plaintiffs meet Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy.

**C.**    **Rule 23(b)(3)**

Plaintiffs also must satisfy Rule 23(b)(3).  Rule 23(b)(3) has two requirements: predominance and superiority.  Those requirements also are met.

### *1.* *Predominance*

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)."  *Comcast Corp.*, ___ U.S. at ____, slip op. at 6.  "Rule 23(b)(3), as an 'adventuresome innovation,' is designed for situations 'in which class-action treatment is not as clearly called for.'"  *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2258). "That explains Congress's addition of procedural safeguards for (b)(3) class members beyond those provided for (b)(1) or (b)(2) class members (*e.g.*, an opportunity to opt out), and the court's duty to take a "'close look' at whether common questions predominate over individual ones.'"  *Id.* (quoting *Wal-Mart*, 131 S. Ct. at 2258).

"Common issues of fact and law predominate if they ha[ve] a direct impact on every class member's effort to establish liability and on every class member's entitlement to . . . monetary relief."  *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1255 (11th Cir.

2004), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008)). "[T]o determine whether common questions predominate, [the court is] called upon to examine the cause[ ] of action asserted in the complaint on behalf of the putative class." *Allapattah Servs. v. Exxon Corp.*, 333 F.3d 1248, 1260 (11th Cir. 2003) (citation and internal quotation marks omitted).

In this suit's single count, the named Plaintiffs and putative class members contend that when they paid to play electronic bingo, they made wagers with Defendants within the meaning of § 8-1-150(a) (or in other words, entered into contracts founded upon gambling consideration with Defendants) and that they lost money as a result of those wagering contracts. They assert that § 8-1-150(a) permits them to recover those losses from Defendants. As discussed in the context of Rule 23(a)(2), there is a common issue of law as to liability with respect to the legality of the electronic bingo operation at Victoryland. Another common legal issue centers on whether a plaintiff enters into a contract with the manufacturer of an electronic bingo machine when he or she pays to play on that machine. (*See* Mem. Op. & Order (Doc. # 98).) These common legal issues also generate common factual inquiries. The issue of the electronic bingo machines' legality under Alabama law requires a factual assessment of exactly how the electronic bingo machines operate, and the contractual issue requires a factual assessment of the business arrangements under

17

which those machines operated. The court finds that these factual and legal questions of liability will predominate in this litigation.

Plaintiffs also must prove that they lost money and the amount of those losses. Admittedly, the damages calculations will involve some individualized inquiries, as Defendants devote much ink to pointing out, but not to the extent that those inquiries predominate over the common questions with respect to liability. Generally, "the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate." *Allapattah Servs.*, 333 F.3d at 1261 (collecting cases); *see also Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs.*, 601 F.3d 1159, 1178 (11th Cir. 2010) ("The presence of individualized damages issues does not prevent" certification of a Rule 23(b)(3) class.). Here, the Q-Club card data stored in the IGT Advantage System will reduce the number of individual factual inquiries to a significant degree , *see supra* note 3. Although Defendants highlight the shortcomings of the data, those shortcomings present issues for sifting at the merits stage, not the class certification stage.

Defendants also contend that *Funliner of Alabama, L.L.C. v. Pickard*, 873 So. 2d 198 (Ala. 2003), and *Wright v. Department of Alabama Veterans of Foreign Wars*, No. 07cv2071, at 11 (N.D. Ala. March 24, 2010), compel a different result, but those

cases are distinguishable.  Both courts denied certification of a plaintiff's class on § 8-1-150(a) claims because the plaintiff failed to satisfy the predominance test.[6]

In *Wright*, involving an allegedly illegal electronic bingo operation in Triana, Alabama, the district court found that "highly individualized fact issues" would be required to assess when the plaintiff played electronic bingo, on which machines she played, and the amount of her losses.  No. 07cv2071, at 19–20.  The *Wright* plaintiff did not have a casino-generated, electronic database to establish her § 8-1-150 gambling losses.  Rather, the *Wright* plaintiff had to rely on her memory, personal financial documents (including bank withdrawals, credit card statements, and a signature loan), as well as her diary, and each putative member would have had to proceed in a similar manner.  Relying on *Funliner*, the district court held that "individual issues . . . predominate[d] over questions of law or fact common to all class members."  No. 07cv2071, at 20.  In *Funliner* also, there was "little, if any" objective evidence concerning who had played the video-gaming devices, when they had played, and the amount of losses.  *See id.* at 210; *see also id.* at 203–04 (setting out that named plaintiffs had no written records or personal knowledge of how many

---

[6] "[T]he Alabama Rules of Civil Procedure were patterned after the Federal Rules of Civil Procedure."  *Funliner*, 873 So. 2d at 207 n.7 (citation and internal quotation marks omitted).

times or when they had played the video-gaming devices or of the amount of their losses).  Here, Plaintiffs benefit from the existence of such information.

In sum, Plaintiffs adequately have shown that "questions of law or fact common to class members predominate over any questions affecting only individual members[.]"  Fed. R. Civ. P. 23(b)(3).

### 2.  *Superiority*

"The second prong of Rule 23(b)(3) requires a court to determine whether 'a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.'"  *Sacred Heart*, 601 F.3d at 1183 (quoting Fed. R. Civ. P. 23(b)(3)).  "The focus of this analysis is on the 'relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'"  *Id.* at 1183–84 (quoting *Klay*, 382 F.3d at 1269).  "As a result, the predominance analysis has a 'tremendous impact on the superiority analysis . . . .'"  *Id.* at 1184 (quoting *Klay*, 382 F.3d at 1269).  This is because "'the more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims,' both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability."  *Id.* (quoting *Klay*, 382 F.3d at 1269).  Factors relevant to the inquiry include:  (1) a class member's interest in "individually controlling the prosecution or

defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already commenced by or against members of the class"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the difficulties likely to be encountered in the management of a class action." *Klay*, 382 F.3d at 1269.

The *Klay* factors support a finding of superiority. First, the proposed class members likely would not have much interest in controlling the prosecution of their cases in separate actions as the damages appear to be low, at least when compared to the costs of pursuing each action individually. Second, no party has indicated that a proposed class member presently is involved in litigation concerning the same claims and parties. Third, the number of potential class members makes other methods impractical in this case, rendering a class action forum desirable for adjudicating the § 8-1-150(a) claims Plaintiffs are asserting on behalf of the putative class. And where factual and legal issues predominate, this third factor "will almost always mitigate in favor of certifying a class." *Id.* at 1270. Fourth, a class action will help streamline

the management of the large number of individual claims.[7] *See id.* ("[W]here a court has already made a finding that common issues predominate over individualized issues, we would be hard pressed to conclude that a class action is less manageable than individual actions.").  In sum, a class action in this case "is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

## V.  CONCLUSION

Plaintiffs' class is ascertainable and satisfies the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation, as well as the Rule 23(b)(3) superiority and predominance standards.   Accordingly, it is ORDERED:

1.      Plaintiffs' Motion for Class Certification (Doc. # 216) is GRANTED;

2.      The named Plaintiffs – Dollie Williams, David M. Palmer II, and Robin Paige – are designated as class representatives of a Rule 23(b)(3) class defined as follows:

---

[7] There also are a number of "class action" tools available to the district court to help manage any individualized issues.  *See Weekes-Walker*, 281 F.R.D. at 528 (providing that these tools include: "'(1) bifurcating liability and damage trials . . . ; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class.'" (quoting 2 *Newberg on Class Actions* § 4:25)).

All persons who, at any time during the period beginning September 4, 2009 through and including February 1, 2010, while using their Q-Club cards, lost money or value playing electronic "bingo" at Macon County Greyhound Park, commonly known as Victoryland.

Excluded from the class are those individuals who have filed an individual lawsuit on their own behalf concerning these claims; the officers, directors and employees of the Defendants, and the immediate families of any such person; and all judicial officers of the United States who preside over or hear this case, as well as all persons who are related to them as specified in 28 U.S.C. § 455(b)(5).

3.      Attorneys David R. Donaldson, Tammy M. Stokes, and Star M. Tyner of Donaldson & Guin LLC are designated as class counsel.

DONE this 29th day of March, 2013.

/s/ W. Keith Watkins
CHIEF UNITED STATES DISTRICT JUDGE
